IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CRISTHIAN ARNALDO TORRES SORIA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 1:26-CV-318-RP |
| | § | |
| PAMELA BONDI, *in her official capacity as* | § | |
| *Attorney General of the United States*, et al., | § | |
| | § | |
| Respondents. | § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is *pro se* Petitioner Cristhian Arnaldo Torres Soria's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on February 9, 2026. (Dkt. 1). On February 13, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 3). On February 19, 2026, Respondents Pam Bondi, Kristi Noem, and Miguel Vergara[1] (together, "Respondents") timely filed a response in opposition, (Dkt. 4). On March 5, 2026, the Court received Petitioner's filing fee for his Petition. (Dkt. 6). On March 9, 2026, the Court ordered Respondents to provide certain information relevant to the disposition of Petitioner's Petition, (Dkt. 7), to which Respondents timely responded on March 11, 2026, (Dkt. 8). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

### I. BACKGROUND

Petitioner is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 1). Petitioner, a citizen of Cuba, entered the United States on January 16, 2024, "seeking refuge and lawful status." (*Id.* at 1). Petitioner has filed a Form 1-485 Application to Register

---

[1] All individual respondents were sued in their official capacities. The Response is filed only on behalf of the federal employees in this action. (Dkt. 4, at 1 n.1).

Permanent Residence or Adjust Status under the Cuban Adjustment Act, which U.S. Citizenship and Immigration Services ("USCIS") accepted on January 24, 2025. (*Id.*). Per Petitioner's father's declaration, Petitioner was granted parole after he entered the country in January 2024 and was working in Austin, Texas when he was detained by U.S. Immigration and Customs Enforcement ("ICE"). (*Id.* at 7). (*See also* Decl. to Pet., Dkt. 1-3, at 1) (attesting that Petitioner worked with declarant in Austin, Texas). Indeed, in their Response, Respondents attached a Notice to Appear (Form I-862) issued to Petitioner on January 21, 2024, which placed him in full removal proceedings. (Not. To Appear, Dkt. 4-1, at 1)). In their Response to the Court's Order to Show Cause, (Dkt. 7), Respondents stated that Petitioner was subsequently released and paroled under Section 212(d)(5) of the Immigration and Nationality Act ("INA"), ("8 U.S.C. § 1182(d)(5)"), and that his parole expired on January 19, 2026. (Resp. Order Show Cause, Dkt. 8, at 1; Form I-94, Dkt. 8-2, at 1).

Petitioner was detained on September 24, 2025, "following his incarceration at the Travis County Correctional Complex for evading arrest and possession of marijuana." (Resp. Order Show Cause, Dkt. 8, at 1). Respondents assert that Petitioner is being detained under "mandatory detention" authority for aliens who are in the process of entering the United States, 8 U.S.C. § 1225. (Resp., Dkt. 4, at 1). An immigration judge ordered Petitioner removed to Cuba on February 12, 2026, and Petitioner reserved appeal. (*Id.* at 2) Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. Petitioner claims his ongoing detention without bond is unlawful in violation of his Fifth Amendment Due Process Clause rights. (Pet., Dkt. 1, at 3).[2]

---

[2] To the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025). Given that Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225, (Resp., Dkt. 4, at 3), the Court concludes that Petitioner's exhaustion of administrative remedies would be futile.

## II. DISCUSSION

Respondents argue that Petitioner is an "arriving alien" under 8 U.S.C. § 1225(b)(2)(A) and is subject to mandatory detention. (Resp., Dkt. 4, at 3).[3] However, Respondents' argument ignores the fact that Respondents' detention violates the INA on a separate basis. As discussed in Section I, *supra*, Respondents assert that Petitioner was granted parole pursuant to 8 U.S.C. §1182(d)(5) and that his parole was set to expire on January 19, 2026. (Resp. Order Show Cause, Dkt. 8, at 1; Form I-94, Dkt. 8-2, at 1). Yet, Respondents detained Petitioner on September 24, 2025, and represent that they are "unable to provide evidence" showing whether the government followed the proper procedures for revoking Petitioner's parole before detaining him, as requested by the Court. (Resp. Order Show Cause, Dkt. 8, at 1).

Humanitarian or public interest parole is the form of release available under the INA for an "arriving" noncitizen who is subject to mandatory detention under § 1225(b)(2)(A). *See Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018) ("There is also a specific provision authorizing temporary parole from § 1225(b) detention 'for urgent humanitarian reasons or significant public benefit,' § 1182(d)(5)(A).") Pursuant to 8 C.F.R. § 212.5(e), parole issued under § 1182(d)(5) terminates either (1) without written notice at the time it expires or upon the noncitizen's departure from the United States, or (2) with written notice "upon accomplishment of the purpose for which parole was authorized or when in the opinion of [certain DHS officials] neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." In that case, after the written notice to the noncitizen, "he or she shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i). Accordingly, based on the record in this case at this stage,

---

[3] The Court notes that, although Respondents point out that Petitioner was arrested for evading arrest and possession of marijuana in September 2024, (Resp. Order Show Cause, Dkt. 8, at 1), they do not claim to have detention authority based on this charge. (Resp., Dkt. 4, at 3–4) (asserting detention authority under § 1225(b)(2)(A)). And, though certain criminal charges do result in mandatory detention, "evading arrest and possession of marijuana" are not among these charges. *See* 8 U.S.C. § 1226(c)(1)(E).

the Court finds that Respondents have failed to show that Petitioner was given written notice of his parole being terminated early, and as a result, his parole was not validly revoked in September 2025. Thus, the Court will consider Petitioner's grant of parole as remaining valid until January 19, 2026.

In analogous situations, other courts in the Western District of Texas have held that Respondents' detention of a noncitizen with a valid grant of parole in place rendered the detention unlawful. *See Camacho-Gutierrez*, 2026 WL 195758, at *3 ("[B]ecause DHS re-detained [a petitioner] without notice or an individualized determination in violation of its own regulations, [her] detention is unlawful.); *see also Ramirez-Gavilan v. Collins*, No. 1:25-CV-2052-RP, 2026 WL 274705, at *5 n.7 (W.D. Tex. Jan. 17, 2026) (if a petitioner is subject to mandatory detention under § 1225(b)(2)(A) but released pursuant to parole under § 1182(d)(5), so long as parole was not terminated when petitioner was redetained, he would be "held in violation of the INA—and must be released."); *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at *2 (W.D. Tex. Feb. 9, 2026) ("Because the Government released [p]etitioner [under parole] and permitted him to live in the United States for over a year, they cannot revoke that liberty without an individualized determination of the need to do so."). This Court agrees that detention of a noncitizen who has a valid grant of humanitarian parole violates the INA and its implementing regulations and finds that Petitioner's detention is unlawful on the basis of his parole being invalidly revoked. But, for completeness, the Court will also reach Petitioner's claim for release under the Due Process Clause.[4]

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v.*

---

[4] This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who have been residing in the country for a period of time, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g.*, *Guzman v. Bondi*, --- F. Supp. 3d ---, No. 1:25-CV-2055-RP, 2025 WL 3724465 (W.D. Tex. Dec. 23, 2025). This interpretation was recently rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. By contrast, it did not examine whether Petitioner's ongoing detention without access to a bond hearing violates the Constitution.

*Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Contrary to Respondents' argument, (Resp., Dkt. 4, at 4), "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025) (discussing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. He "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the United States for over a year and a half prior to his detention. For constitutional purposes, Petitioner's time living in the United States differentiates him from the petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.*

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, "a [noncitizen] may obtain a liberty interest through their presence in the country, particularly where that presence is with the express permission of the Government," such as via—in Petitioner's case—a grant of two years of parole. *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citations omitted). The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g., id.*; *Vieira*, 2025 WL 2937880, at *7 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights."); *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21,

6

2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process"); *Hernandez-Fernandez*, 2025 WL 2976923, at *10 (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights."). Federal district courts in Texas have also made this finding subsequent to the Fifth Circuit issuing its opinion in *Buenrostro-Mendez*. *See, e.g.*, *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at *2 & n.1 (W.D. Tex. Feb. 9, 2026) (holding that *Buenrostro-Mendez* "does not change this case's outcome on procedural due process grounds"); *Clemente Ceballos v. Garite*, No. EP-26-CV-00312-DB, 2026 WL 446509, at *2 & n.2 (W.D. Tex. Feb. 10, 2026) (same); *Marceau*, 2026 WL 368953 at *2 (W.D. Tex. Feb. 9, 2026) ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in *Buenrostro-Mendez* . . . *Buenrostro-Mendez* has no bearing on this Court's determination of whether [petitioner] is being detained in violation of [his]

constitutional right to procedural due process."). This Court agrees with the Due Process Clause analysis in the above cases, and finding a constitutional violation, it need not reach the other issues further briefed by the parties.

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13−14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."). The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner's immediate release.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1.  Upon receipt of this order, Respondents shall immediately release Petitioner from custody;

2.  Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3.  Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner and set at a date agreed upon by

both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

**IT IS FURTHER ORDERED** that Respondents shall provide a status report **on or before March 16, 2026**, detailing their compliance with this Order.

**SIGNED** on March 12, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

9